UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY CASSIDY,<br>    Plaintiff,<br>v.<br>COMMISSIONER OF SOCIAL SECURITY,<br>    Defendant. | Case No. 17-cv-04711-MEJ<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 20, 21 |

## INTRODUCTION

Plaintiff Timothy Cassidy brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of Defendant Commissioner of Social Security denying Plaintiff's claim for disability benefits. Pending before the Court are the parties' cross-motions for summary judgment. PMSJ, Dkt. No. 20; DMSJ, Dkt. No. 21; *see also* Reply, Dkt. No. 22. Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument. Having carefully reviewed the parties' positions, the Administrative Record (AR), and relevant legal authority, the Court hereby **DENIES** Plaintiff's Motion and **GRANTS** Defendant's Cross-Motion for the reasons set forth below.

## SOCIAL SECURITY ADMINISTRATION PROCEEDINGS

On March 17, 2014, Plaintiff filed a claim for Disability Insurance Benefits, alleging disability beginning on August 19, 2013. AR 184-90. Plaintiff subsequently amended his onset date to June 1, 2013. AR 200. The Social Security Administration (SSA) denied Plaintiff's claim initially and on reconsideration. AR 70-105. Plaintiff requested a hearing before an Administrative Law Judge (ALJ). AR 118-19. ALJ K. Kwon conducted a hearing on December 7, 2015. AR 43-69. Plaintiff testified in person at the hearing and was represented by non-

attorney Dan McCaskell. *Id.*

The regulations promulgated by the Commissioner of Social Security provide for a five-step sequential analysis to determine whether a Social Security claimant is disabled.[1] 20 C.F.R. § 404.1520. The sequential inquiry is terminated when "a question is answered affirmatively or negatively in such a way that a decision can be made that a claimant is or is not disabled." *Pitzer v. Sullivan*, 908 F.2d 502, 504 (9th Cir. 1990). During the first four steps of this sequential inquiry, the claimant bears the burden of proof to demonstrate disability. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). At step five, the burden shifts to the Commissioner "to show that the claimant can do other kinds of work." *Id.* (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).

The ALJ must first determine whether the claimant is performing "substantial gainful activity," which would mandate that the claimant be found not disabled regardless of medical condition, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(i), (b). Here, the ALJ determined that Plaintiff had not performed substantial gainful activity since June 1, 2013. AR 26.

At step two, the ALJ must determine, based on medical findings, whether the claimant has a "severe" impairment or combination of impairments as defined by the Social Security Act. 20 C.F.R. § 404.1520(a)(4)(ii). If no severe impairment is found, the claimant is not disabled. 20 C.F.R. § 404.1520(c). Here, the ALJ determined that Plaintiff had the following severe impairments: obesity; back pain with remote laminectomy and fusion; anxiety disorder; and, depressive disorder. AR 26.

If the ALJ determines that the claimant has a severe impairment, the process proceeds to the third step, where the ALJ must determine whether the claimant has an impairment or combination of impairments that meet or equals an impairment listed in 20 C.F.R. Part 404, Subpt. P, App. 1 (the Listing of Impairments). 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant's

---

[1] Disability is "the inability to engage in any substantial gainful activity" because of a medical impairment which can result in death or "which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

2

impairment either meets the listed criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering age, education and work experience. 20 C.F.R. § 404.1520(d). Here, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets the listings. AR 27-28.

Before proceeding to step four, the ALJ must determine the claimant's Residual Function Capacity (RFC). 20 C.F.R. § 404.1520(e). RFC refers to what an individual can do in a work setting, despite mental or physical limitations caused by impairments or related symptoms. 20 C.F.R. § 404.1545(a)(1). In assessing an individual's RFC, the ALJ must consider all of the claimant's medically determinable impairments, including the medically determinable impairments that are nonsevere. 20 C.F.R. § 404.1545(e). Here, the ALJ determined that Plaintiff has the RFC to perform light work with some postural limitations, and was also limited to "simple, routine, unskilled tasks." AR 28-35.

The fourth step of the evaluation process requires that the ALJ determine whether the claimant's RFC is sufficient to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f). Past relevant work is work performed within the past 15 years that was substantial gainful activity, and that lasted long enough for the claimant to learn to do it. 20 C.F.R. § 404.1560(b)(1). If the claimant has the RFC to do his past relevant work, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). Here, the ALJ determined that Plaintiff could not perform past relevant work as a security officer, taxi driver, or delivery driver. AR 35.

In the fifth step of the analysis, the burden shifts to the Commissioner to prove that there are other jobs existing in significant numbers in the national economy which the claimant can perform consistent with the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g); 404.1560(c). The Commissioner can meet this burden by relying on the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, Subpt. P, App. 2 (the Grids). *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). Here, based on the testimony of the vocational expert, Plaintiff's age, education, work experience, and RFC, the ALJ determined Plaintiff could perform six different occupations that were available in

3

significant numbers in the national economy: cashier parking lot attendant; cashier self-serve; shipping & receiving weigher; order clerk; table worker; and assembler. AR 35-36.

The ALJ issued an unfavorable decision finding that Plaintiff was not disabled based on the foregoing analysis on April 1, 2016. AR 24-37. This decision became final when the Appeals Council declined to review it on June 20, 2017. AR 4-7. Having exhausted all administrative remedies, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). On March 27, 2018, Plaintiff filed the present Motion for Summary Judgment. On April 24, 2018, Defendant filed a Cross-Motion for Summary Judgment.

## **LEGAL STANDARD**

This Court has jurisdiction to review final decisions of the Commissioner pursuant to 42 U.S.C. § 405(g). The ALJ's decision must be affirmed if the findings are "supported by substantial evidence and if the [ALJ] applied the correct legal standards." *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (citation omitted). "Substantial evidence means more than a scintilla but less than a preponderance" of evidence that "a reasonable person might accept as adequate to support a conclusion." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)). The court must consider the administrative record as a whole, weighing the evidence that both supports and detracts from the ALJ's conclusion. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). However, "where the evidence is susceptible to more than one rational interpretation," the court must uphold the ALJ's decision. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Determinations of credibility, resolution of conflicts in medical testimony, and all other ambiguities are to be resolved by the ALJ. *Id.*

Additionally, the harmless error rule applies where substantial evidence otherwise supports the ALJ's decision. *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990). A court may not reverse an ALJ's decision on account of an error that is harmless. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006)). "'[T]he burden of showing that an error is harmful normally falls upon the party

4

attacking the agency's determination.'" *Id.* (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

**DISCUSSION**

The only issue before the Court is whether the ALJ articulated clear and convincing reasons, based on substantial evidence, for partially rejecting evidence of Plaintiff's subjective pain and symptoms.[2]

"In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007); *see also Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) ("Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence."). "Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036. Here, the ALJ found the objective medical evidence could reasonably be expected to produce the pain or other symptoms alleged, and did not identify any evidence of malingering. *See* AR 29. The ALJ thus was required to offer clear and convincing reasons for finding Plaintiff not entirely credible.

The ALJ summarized Plaintiff's pain and symptoms testimony and statements: Plaintiff alleged his daily back pain was around 4 out of 10 in severity with medications, and that epidural steroid injections reduced his back pain for a couple of weeks; his back pain was exacerbated by extra chores; he usually had 3 good days and 4 bad days per week; he can walk 3 blocks with his wife on a good day, but does not otherwise exercise; he can do dishes for 10 minutes on a regular

---

[2] In his opening brief, Plaintiff made an additional argument regarding the application of the Grids, which he abandoned on Reply. *See* Reply at 3.

5

basis and can vacuum the house with breaks; he is able to perform personal care most of the time, but may need help on bad days to put on shoes and socks due to difficulty bending over; on bad days, he does not attempt to lift anything over 20 pounds; and, he can lift 5 to 10 pounds consistently. AR 29. Plaintiff does not dispute the ALJ's characterization of the evidence or argue the ALJ failed to take into account material evidence of his pain or limitations. *See* PMSJ.

The ALJ found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [his] symptoms are not entirely credible for the reasons explained in this decision." AR 29. Plaintiff argues four of the reasons offered by the ALJ are not clear and convincing reasons to discredit his testimony: (1) medication and primarily conservative measures were controlling his symptoms effectively; (2) his minor ADLs are inconsistent with his alleged limitations; and (3) Plaintiff did not lose weight.

### 1. Effectiveness of Pain Management & Conservative Treatment

Plaintiff argues the ALJ "appears to have discredited" his testimony "for isolated statements in the treatment records that medication was controlling his symptoms." PMSJ at 11.

The ALJ cites earlier instances in the record where Plaintiff reported to his providers that his pain was controlled by medication, including injections. AR 29-30. While the ALJ acknowledges that Plaintiff experienced increased back pain by May 2014, the ALJ does not acknowledge that records from that point forward reveal that Plaintiff reported his pain was not controlled by medication, including injections. AR 30. On May 28, 2014, Plaintiff presented to Dr. Michael Yang (his pain management physician) with constant pain rated at 4.5 out of 10, which was exacerbated if he spent too much time sitting, walking, or driving. AR 1340. Dr. Yang observed that Plaintiff's lumbar flexion was limited to 45 degrees due to moderate low back pain, and extension was limited to only 10 degrees due to facet loading pain; palpation of lumbar facets elicited facet tenderness; straight leg raise was positive at 30 degrees; and there was exquisite tenderness of the thoracolumbar fascia. *Id.* Dr. Yang prescribed more pain medication and scheduled Plaintiff for a bilateral lumbar epidural steroid injection. AR 1341. On June 24, 2014, Plaintiff reported to Dr. Yang that his pain was rated 4 out of 10 with medication, with pain and

6

stiffness, restricted range of motion. AR 1342. Dr. Yang refilled Plaintiff's pain medications, planned to request authorization for and schedule a bilateral sacroiliac ligament injection, and planned to request authorization for a left hip CT and a CT of the bony pelvis. AR 1343. On July 22, 2014, Dr. Yang noted Plaintiff's CT scans revealed some evidence of instability in the bilateral SI joints and some mild left hip osteoarthritis. AR 1344. Plaintiff indicated his pain was currently at 4 out of 10, but had ranged from 4 to 8 since his last visit; he wanted to try bilateral sacroiliac ligament injections. AR 1433. Plaintiff also "denie[d] new symptoms or acute illness, denie[d] new medications, and denie[d] med[ication] [adverse side effects] since last visit and would like refills without changes. Patient report[ed] that the benefit of chronic pain medication maintenance regimen, activity restriction, and rest continue to keep pain within a manageable level to allow [patient] to complete necessary activities of daily living." AR 1344. Dr. Yang noted that if the injections did not sufficiently relieve Plaintiff's pain, he would recommend a referral for orthopedic surgical consultation. AR 1344. On July 25, 2014, Plaintiff received the injections. AR 1346. Plaintiff cites no records describing the effect of the July 2014 injections. Although there is no direct evidence that the injections relieved Plaintiff's pain, the ALJ noted that Plaintiff was never referred to any orthopedic consultation, "so this tends to support a finding that the claimant's pain management treatment is fairly effective at helping to alleviate his symptoms." AR 30.

Plaintiff argues the fact he is prescribed morphine "is not normal." Reply at 5; *see also* PMSJ at 12. But that Plaintiff is prescribed strong narcotics to manage his pain does not establish his pain management regimen is ineffective.[3]

Plaintiff also notes the ALJ stated that his "treatment notes show 'fairly effective treatment with primarily conservative measures.'" AR 12 (quoting AR 31). The ALJ specified that these measure included medications, several injections at a surgical center, and several in-office trigger

---

[3] Plaintiff does not argue the side effects of these medications impair his ability to work by making him drowsy or fatigued.

7

point injections – and that Plaintiff had not had any injections in the prior year. Far from "expect[ing Plaintiff] to go through another [back] surgery" (PMSJ at 12), the ALJ found there was no evaluation of Plaintiff's latest CT scan by an orthopedic surgeon, "so the CT scan findings did not necessitate further diagnostic and treatment evaluation." AR 31. The ALJ did not suggest Plaintiff's testimony was not credible because he declined more aggressive treatment options; rather, the ALJ found Plaintiff's testimony not fully credible because the record showed Plaintiff did not need more aggressive treatment options to effectively control his pain.[4]

These reasons are based on substantial evidence. As such, the Court cannot substitute its judgment for that of the ALJ. *See supra* at 4.

2. Daily Activities

The ALJ found that the credibility of Plaintiff's allegations was "weakened by inconsistencies between his allegations, his statements regarding daily activities, and the medical evidence . . . the inconsistencies suggest that the information provided by the claimant generally may not be entirely reliable." AR 35.[5] The ALJ found the record shows Plaintiff "is capable of some significant activities of daily living that support a finding he is capable of work within his" RFC. AR 32. The more significant ADLs in the record include: driving two to three times per week, mostly to his parents' house 5 to 7 minutes away (AR 56); walking with his wife up to 3 blocks or 15-17 minutes (AR 54, 224); reading or using the computer to look at the internet while

---

[4] Plaintiff, who is represented by counsel, cannot create a triable issue of fact simply by asserting – as he does here – that "[t]his reason strongly conflicts with the record that shows that Cassidy has explored just about every treatment option available to him" without identifying where in the nearly 1,500-page record this is shown. PMSJ at 12. The Court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

[5] The ALJ did not specifically identify the portions of Plaintiff's testimony that were inconsistent with his daily activities. This was error, as "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *see also Brown-Hunter v. Colvin*, 806 F.3d 487, 489, 492-94 (9th Cir. 2015) ("To ensure that our review of the ALJ's credibility determination is meaningful, and that the claimant's testimony is not rejected arbitrarily, we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination.").

8

lying in a recliner (AR 55-56, 317, 320); being able to lift 5 to 10 pounds on a consistent basis and up to 20 pounds on a bad day (AR 57); taking care of his dogs by feeding, cleaning waste, occasionally throwing the ball for them, and on very rare occasions walking them (AR 220, 334); taking out the garbage twice a week (AR 221); coaching football for 6 to 8 hours a week from July through November, limiting himself to verbal coaching instead of physically showing youths what to do, and missing some practices because of pain (AR 223, 317-18, 320, 323); independently taking care of his personal needs during the day (AR 332-336); handling finances (AR 222); and feeling sufficiently pain-free after one injection to prepare to paint his house, prompting a lecture from the doctor he visited the next day about not increasing his activity beyond normal limitations and to rest the day after an injection (AR 1450).[6] The ALJ acknowledged that Plaintiff was able to complete these ADLs with the benefit of his chronic pain medication maintenance regimen, activity restriction, and rest. AR 33.

"One does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). However, ALJs relying upon a claimant's activities of daily living nevertheless must "be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014). The Ninth Circuit therefore allows ALJs to make adverse credibility findings based on ADLs only in limited circumstances. "[E]ngaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (citations omitted). A claimant's ADLs also

---

[6] The ALJ's summary of Plaintiff's ADLs (AR 33), and Defendant's description thereof (DMSJ at 8-9), omit material details that demonstrate the limited manner in which Plaintiff actually performs his ADLs. For example, the ALJ states Plaintiff "reported that he was busy preparing for house painting" and Defendant states that Plaintiff "also engage[s] in house painting." Similarly, the ALJ states Plaintiff "coaches football for 6 to 8 hours weekly . . . from July through November" and Defendant states Plaintiff "coach[es] youth football league weekly." Plaintiff does not address these characterizations. *See* Reply.

9

> may be grounds for an adverse credibility finding if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting. [] The ALJ must make specific findings relating to the daily activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination.

*Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (internal quotation marks, alterations, and citations omitted). Neither circumstance is met here.

First, the ALJ made no findings as to either the incompatibility of Plaintiff's symptoms with his ADLs, nor about the transferability of his ADLs to a work setting.

Second, there is no evidence that Plaintiff's daily activities are incompatible with the severity of his alleged pain symptoms. Plaintiff testified he had good and bad days, and that at baseline his pain was at a 4; however, on bad days, his pain could spike to 6 or 7 (AR 53). He testified his pain was temporarily improved with medication. He also explained to a treating physician that he could alleviate his pain through a combination of moving around, short walks, and lying down with his legs up. AR 1318. Plaintiff testified that he spends much of his time in a recliner to elevate his legs. *See* AR 56, 339; *see also* AR 339 (Plaintiff's wife stated he spends alot of time in his recliner); AR 317 (Plaintiff's friend stated that when he visits Plaintiff, Plaintiff is usually sitting and reading a book). Plaintiff did not testify that he was constantly experiencing totally disabling pain; he only testified that he was constantly experiencing significant pain, which spiked at times, and which he was able to manage by lying down and moving around. The ADLs in the record are not incompatible with his alleged symptoms.

Finally, there also is no evidence that Plaintiff spent "a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn*, 495 F.3d at 639. The ALJ did not make any specific findings that Plaintiff's daily activities, such as reading in a recliner, verbally coaching youths for several hours a week, or driving ten minutes to his mother's house, are transferable to a work setting.

The Court agrees that the ALJ erred in finding that Plaintiff's ADLs support an adverse credibility finding here.

10

### 3. Failure to Lose Weight

The ALJ considered Plaintiff's obesity, as required by Social Security Ruling 02-1p. AR 31. The ALJ does appear to have relied on Plaintiff's failure to lose weight as a basis for discounting his credibility: "The claimant's obesity would be expected to significantly exacerbate his back and leg pain. However, there is no indication that the claimant has made any significant effort at weight loss treatment modalities despite strong recommendations from treating sources." *Id.* A claimant's failure to follow treatment for obesity will rarely affect disability determinations, and the SSA will find failure to follow prescribed treatment only when a disabled individual's treating source has prescribed treatment that is clearly expected to restore the ability to engage in substantial gainful activity and the evidence shows that the claimant failed to follow the prescribed treatment without good reason. S.S.R. 02-1p ¶ 14 (2002) ("How Do We Evaluate Failure To Follow Prescribed Treatment in Obesity Cases?") (citing S.S.R. 82-59). Although this is not an obesity case, the Court finds that Plaintiff's failure to lose weight was not a clear and convincing reason to discredit his symptoms testimony based on this record. The ALJ did not identify evidence that Plaintiff failed to follow the prescribed treatment – only evidence that he failed to lose weight. *See* AR 31. There also is no evidence that Plaintiff did not have good reason for not following the prescribed treatment. Defendant does not substantively oppose Plaintiff's motion on this argument. *See* DMSJ at 8 n.7.

Plaintiff's failure to lose weight was not a clear and convincing reason for discrediting his pain testimony.

### 4. Harmless Error

"[A]n ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record." *Molina*, 674 F.3d at 1115 (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195-97 (9th Cir. 2004)). This type of "error is harmless so long as there remains substantial evidence supporting the ALJ's decision

11

and the error does not negate the validity of the ALJ's ultimate conclusion." *Id.* (internal quotation marks and citations omitted). The Court must "look at the record as a whole to determine whether the error alters the outcome of the case." *Id.*

Here, the ALJ provided two invalid reasons for disbelieving Plaintiff's testimony, but the Court finds the two other reasons Plaintiff challenged were based on substantial evidence. Plaintiff does not even attempt to show the ALJ's error, in light of the evidence of record, was harmful. *See Molina,* 674 F.3d at 1111 ("The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." (internal quotation marks and citation omitted)). In addition, Plaintiff does not challenge the ALJ's other reasons for discounting his pain and symptoms testimony: the results of the consultative orthopedic examination in June 2014 were "not strongly adverse"; the treatment notes generally showed Plaintiff was alert, oriented, very pleasant, and in no acute distress; the results of a June 2014 consultative psychological examination was "relatively benign"; Plaintiff did not need to use an ambulatory assistive device despite his radicular pain; he had full lower extremity strength except for the left great toe; he had somewhat limited range of lumbar motion, with otherwise normal joint motion; and a May 2015 examination by his primary care physician was "essentially benign." AR 32-34.

Under these circumstances, Plaintiff has not met his burden of showing the ALJ's error was harmful. The Court must therefore find that the ALJ's decision is based on substantial evidence, including extensive treatment notes documenting the efficacy of pain management medication; physical examinations with pain management physicians; the report of a consultative orthopedic examiner; and the report of a consultative psychological examiner.

**CONCLUSION**

For the reasons stated above, the Court **GRANTS** Defendant's Motion and **DENIES**

1  Plaintiff's Motion.  The Court shall enter a separate judgment and direct the Clerk of Court to
2  close the file.
3     **IT IS SO ORDERED.**

5  Dated: May 15, 2018

   _____
   MARIA-ELENA JAMES
   United States Magistrate Judge